UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JHONY HURTADO GOMEZ,

                Petitioner,

      v.

JULIO HERNANDEZ, *et al.*,

                Respondents.

Case No. C26-2082-MLP

ORDER

Petitioner Jhony Hurtado Gomez, through counsel, filed this habeas action under 28 U.S.C. § 2241, challenging a June 1, 2026, immigration judge's ("IJ") denial of bond, and his continued detention at the Northwest ICE Processing Center ("NWIPC"), as unconstitutional under the Fifth Amendment. (*See generally* dkt. # 1.) Petitioner asserts that the IJ incorrectly declined jurisdiction and made an unreasoned alternative finding that he posed a danger to the community and was a flight risk. (*Id.* ¶¶ 2-3.) Respondents filed a return (dkt. # 7), along with a sworn declaration from Department of Homeland Security ("DHS") Deportation Officer Ian Bloom (dkt. # 8), and an unsworn declaration from their counsel, Michelle Lambert (dkt. # 9). Petitioner filed a traverse in reply. (Dkt. # 10.)

ORDER - 1

Having considered the parties' submissions and the governing law, the Court GRANTS the petition (dkt. # 1) in part for the reasons set forth below.[1]

## I.    BACKGROUND

Petitioner is a native and citizen of Mexico, who first entered the United States on or around March 26, 2006. (Bloom Decl., ¶ 4.) He was arrested near Tucson, Arizona, "processed for voluntary return[,]" and returned to Mexico on March 27, 2006. (*Id.*) Respondents do not know when Petitioner returned to the United States (*see id.*, ¶ 5), but Petitioner asserts he returned to the United States only days after his voluntary return in 2006 and has remained in the United States since (dkt. # 1-5 at 9).

While living in the United States, Petitioner married a U.S. citizen, with whom he shares four U.S. citizen children. (Dkt. # 1, ¶ 27.) Petitioner's minor daughter suffers from "a rare autoimmune disorder," which requires her parents' physical, financial, mental, and emotional support to help with her treatment. (*Id.*, ¶ 29.) Her treatment consists of "frequent clinic appointments, medications, . . . tests[,] and procedures[.]" (*Id.*) Petitioner serves as the "main financial provider for his family[.]" (*Id.*, ¶ 28.)

In 2018, U.S. Citizenship and Immigration Services ("USCIS") approved a Form I-130, Petition for Alien Relative, filed on Petitioner's behalf. (Bloom Decl., ¶ 6.) In 2020, Petitioner submitted a Form I-601A, Application for Provisional Unlawful Presence Waiver with USCIS, which was later denied on July 24, 2024. (*Id.*, ¶ 7.)

In February 2023, Petitioner was arrested for "felony Attempted Strangulation." (Lambert Decl., ¶ 2, Ex. A at 2.) On June 12, 2023, Petitioner pled guilty to "misdemeanor battery-

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

ORDER - 2

domestic violence without traumatic injury against a household member." (*Id.* at 9.) He received a suspended sentence, along with probation until December 12, 2024. (*Id.* at 9-10.)

On May 17, 2024, USCIS requested evidence related to his criminal arrest as part of his pending I-601A application. (Lambert Decl., ¶ 2, Ex. B at 2-4.) Petitioner failed to respond to the request and USCIS accordingly denied his application as abandoned. (*Id.*, Ex. C at 2-3.)

On April 23, 2026, ICE arrested Petitioner in Twin Falls, Idaho after DHS Enforcement and Removal Operations ("ERO") learned of his battery conviction. (Bloom Decl., ¶ 9.) DHS served Petitioner with a Notice to Appear ("NTA") before an immigration court, charging him with removability under the Immigration and Nationality Act ("INA") as a noncitizen present in the United States without being admitted or paroled. (*Id.* ¶ 10; *see* Lambert Decl., ¶ 2, Ex. F at 2-4.) DHS also served Petitioner with a "Class Action Notice" informing him that he may be a member of a class certified by the court in *Bautista v. Santacruz*, 813 F. Supp. 3d 1084 (C.D. Cal. 2025). (Lambert Decl., ¶ 2, Ex. G at 2.) The notice states that Petitioner may be entitled to request release on bond or conditional parole by immigration officers, as well as a bond hearing upon request to the immigration court. (*Id.*) He was transferred to the NWIPC on April 25, 2026. (Bloom Decl., ¶ 11.)

On June 1, 2026, Petitioner attended a bond hearing at the immigration court. (Bloom Decl., ¶ 12.) Prior to the hearing, Petitioner filed a written motion, along with supporting evidence consisting of his 2013 marriage certificate, birth certificates for his four U.S. citizen children, a USCIS "notice of approval" of his I-130 petition filed by his spouse, a letter from St. Luke's Children's Cancer Institute discussing his daughter's autoimmune disorder, and letters of support from some of his children and friends, "attesting to his good moral character,

responsibility, and nondangerousness [*sic*]." (Dkt. ## 1, ¶ 32; 1-3 at 1-23.) DHS, in turn, submitted Petitioner's Form I-213, Record of Deportable/Inadmissible Alien. (Dkt. # 1-4 at 1-8.)

At the bond hearing, the IJ declined jurisdiction citing *Matter of Yajure-Hurtado*, 29 I. & N. Dec. 2016 (BIA 2025), and made an alternative finding that Petitioner posed a flight risk and was a danger to the community. (Dkt. # 1-6 at 1-2.) The IJ issued her decision using a checkbox order. The box indicating "no jurisdiction" is checked, along with a citation to *Yajure-Hurtado*. (*Id.* at 1.) Both "Danger to Community" and "Flight Risk" are also checked as alternative findings. (*Id.*) The box indicating "Conditional release" is checked but does not indicate whether it was "granted", "denied", or "not requested." (*Id.*) Finally, the box indicating the IJ considered Petitioner's ability to pay a bond is checked. (*Id.*) The order contains no additional findings or analysis. (*Id.*) Although Petitioner initially reserved his right to appeal the IJ's decision, he has not filed an appeal with the Board of Immigration Appeals ("BIA") as of June 29, 2026. (Bloom Decl., ¶ 12.)

Petitioner also included a transcript from the bond hearing with his petition (dkt. # 1-5), which the Court has reviewed.

On June 12, 2026, Petitioner filed the instant petition, challenging his detention under the INA and arguing the IJ's decision failed to comport with due process. (Dkt. # 1, ¶¶ 2, 9.) He seeks release from immigration custody. (*Id.* at 22.)

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. 1, § 9, cl. 2). To succeed, a petitioner must show that he or she is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241.

ORDER - 4

## III.    DISCUSSION

Petitioner raises two claims. First, he challenges the government's classification of his detention as mandatory under 8 U.S.C. § 1225(b)(2). (Dkt. # 1, ¶¶ 73-75.) Petitioner argues that § 1225(b)(2) does not apply "to those [noncitizens] who previously entered the country and have been residing in the United Sates prior to being apprehended and placed into removal proceedings[.]" (*Id.*, ¶ 74.) Next, Petitioner challenges the IJ's June 1, 2026, bond denial on due process grounds. (*Id.*, ¶¶ 76-77.) He argues the IJ was not neutral and that she failed to (1) consider all the evidence; (2) provide a reason for his detention, and (3) arrive at a decision supported by the record. (*Id.*)

In response, Respondents assert that Petitioner is detained pursuant to § 1225(b)(2)(A), yet also agree, for purposes of this habeas petition, that Petitioner is a member of the Bond Eligible Class as defined in *Bautista*, 813 F. Supp. 3d at 1127, which entitles him to the "substantial procedural protections" available under 8 U.S.C. § 1226(a). (Dkt. # 7 at 1; *see id.* at 2 (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1214 (9th Cir. 2022)).) Nevertheless, Respondents argue Petitioner is not entitled to habeas relief because he failed to first appeal the IJ's decision to the BIA. (*Id.* at 11.) As for the sufficiency of the IJ's decision, Respondents argue that Petitioner "has failed to demonstrate that a constitutional or legal error occurred here" and that the record provided "sufficient factual support" for the IJ's decision (*Id.* at 3, 21.)

### A.    The Court Waives Exhaustion

As an initial matter, the Court addresses whether Petitioner should be required to first exhaust his administrative remedies by appealing the IJ's denial with the BIA. The exhaustion of administrative remedies in habeas claims is a prudential, rather than jurisdictional, requirement.

*See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). A court may require prudential exhaustion where: (1) agency expertise is necessary to build a proper record; (2) waiving the requirement would encourage bypassing the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes, obviating the need for judicial intervention. *Id.* (citing *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). However, even if these "*Puga*" factors weigh in favor of prudential exhaustion, the Court may waive the requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these "*Laing*" factors applies." *Aden v. Nielsen*, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019) (citations omitted).

Respondents assert the *Puga* factors weigh in favor of exhaustion because (1) the BIA has subject matter expertise for individual immigration bond decisions, (2) the case involves a fact-specific bond determination, and (3) the BIA's review of the IJ's bond decision could preclude the need for judicial review. (Dkt. # 7 at 10.) Respondents further point out that Petitioner "has not addressed the issue of exhaustion in the petition, much less why exhaustion should be excused." (*Id.* at 11.)

In reply, Petitioner asserts exhaustion is an affirmative defense to be raised by the government, suggesting it need not be affirmatively pled or proven in the petition itself. (Dkt. # 10 at 1-2.) Petitioner also conducts his own analysis of the *Puga* and *Laing* factors and argues both weigh in favor of forgoing and waiving the exhaustion requirement. (*Id.* at 2-4.) Given that exhaustion is a prudential requirement and that § 2241 does not specifically require habeas

ORDER - 6

petitioners to exhaust direct appeals before filing petitions for relief, *see Arango Marquez v. I.N.S.*, 346 F.3d 892, 897 (9th Cir. 2003) (citation omitted), to the extent Respondents suggest Petitioner's failure to affirmatively discuss exhaustion in his initial petition operates as a waiver or otherwise forfeits relief, the Court is unpersuaded. Respondents briefed and argued their position regarding exhaustion in their return and are therefore not prejudiced by Petitioner's own analysis in reply.

Here, the Court exercises its discretion in waiving the exhaustion requirement. Contrary to Respondents' position, Petitioner's claim *is* a discreet legal question; namely, whether the IJ correctly applied the law to a given set of facts. *Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024); *see also Soriano v. Hernandez*, 2026 WL 969764, at *3 (W.D. Wash. April 10, 2026). Further, it is unlikely the BIA will consider Petitioner's jurisdictional challenge to the IJ's decision under § 1225(b), as the BIA decided *Yajure-Hurtado* and, as recent as January 13, 2026, Respondents' Chief IJ issued guidance that *Yajure-Hurtado* remains binding. *See Suchite-Mendez v. Mullin*, 2026 WL 1801004, at *4 (W.D. Wash. June 23, 2026) (citing *Practice Alert: District Court Vacates* Yajure Hurtado, AM. IMMIGR. LAWS. ASS'N (Feb. 19, 2026), https://www.aila.org/library/practice-alert-district-court-vacates-Yajure-Hurtado). It is thus similarly unlikely the BIA would correct its own mistakes, rendering exhaustion futile under *Laing*. 370 F.3d at 1001. Accordingly, the Court will not require Petitioner to exhaust available remedies with the BIA before seeking habeas relief in federal court.

**B.    Statutory Detention Authority**

Petitioner asserts his detention is governed under § 1226(a), as it applies to noncitizens like him who are "present" in the United States without inspection, rather than those who are apprehended upon arrival. (Dkt. # 1, ¶¶ 52-58.) Respondents, as noted above, assert Petitioner is

subject to mandatory detention under § 1225(b)(2), but also acknowledge several courts in this Circuit that have rejected their position. (Dkt. # 7 at 6 (citing *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1336 (W.D. Wash. 2025) and *Bautista*, 813 F. Supp. 3d at 1127).)

The Court need not conduct an extensive analysis of the various detention statutes. The Court adopts the reasoning articulated in *Rodriguez* and finds Petitioner, who entered the United States over twenty years ago and was arrested, not at the border, but rather near his home in Twin Falls, Idaho, is detained under § 1226(a). Further, as noted above, while Respondents maintain that *Rodriguez* and *Bautista* were incorrectly decided, they agree here that Petitioner's detention falls under § 1226(a). (Dkt. # 7 at 6.)

**C.      The IJ's Bond Decision**

The Court now turns to the IJ's decision and finds that the IJ committed legal error by declining jurisdiction under *Yajure-Hurtado*, thereby tainting the remainder of the bond hearing. *See Garcia Gabriel v. Hermosillo*, 2026 WL 194233, at *4 (W.D. Wash. Jan. 26, 2026). Further, the hearing transcript also demonstrates that the IJ failed to both consider the evidence presented at the hearing, as well as provide any rational connection between Petitioner's factual circumstances and her findings of danger and flight risk, thereby depriving Petitioner of adequate process due under the Fifth Amendment.

*1.      The IJ Erred in Declining Jurisdiction Under Yajure-Hurtado.*

The IJ's decision to decline jurisdiction under *Yajure-Hurtado* was legally incorrect. As noted above, although immigration courts continue to follow the BIA's decision in *Yajure-Hurtado* as binding precedent (and therefore find that § 1225(b)(2) divests IJs of jurisdiction to consider bond requests from noncitizens who are present in the United States without admission), district courts in this Circuit have rejected that interpretation, finding recent changes

in DHS policies, as affirmed in *Yajure-Hurtado*, violate the INA. *See, e.g. Bautista*, 813 F. Supp. 3d at 1127; *Rodriguez*, 802 F. Supp. 3d at 1336.

In *Bautista*, the U.S. District Court for the Central District of California was tasked with reviewing, *inter alia*, the DHS policy that "require[d] ICE employees to consider anyone arrested in the United States and charged with being inadmissible as an 'applicant for admission' under § 1225(b)(2)(A)" and thus subject to mandatory detention and "not entitled to the due process protections found within § 1226(a)." 813 F. Supp. 3d at 1094. The court certified a Bond Eligible Class, comprised of the following individuals:

> All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

*Id.* at 1127.

The court then granted declaratory relief to members of the Bond Eligible Class and vacated the aforementioned DHS policy requiring ICE agents to treat every person who entered the United States without inspection as "seeking admission" under § 1225(b)(2) and thereby subject to mandatory detention. 813 F. Supp. 3d at 1127. In granting the class's motion for partial summary judgment, the court held that "the interpretation in *Yajure-Hurtado*, 29 I. & N. Dec. 216, which contradicts the [c]ourt's reasoning is no longer controlling." *Id.* at 1106.

Similarly, in *Rodriguez*, the court certified the following "Bond Denial Class":

> All noncitizens without lawful status detained at the Northwest ICE Processing Center who (1) have entered or will enter the United States without inspection, (2) are not apprehended upon arrival, (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the noncitizen is scheduled for or requests a bond hearing.

802 F. Supp. 3d at 1309.

ORDER - 9

Here, the record shows that Petitioner is a class member as defined in *Bautista* and *Rodriguez*. He has been present in the United States without inspection since approximately 2006. He was not detained at the border (*i.e.*, upon arrival), but instead arrested and detained inside the United States after living here for twenty years. And finally, he was not being held pursuant to 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time he requested the bond hearing. *Rodriguez*, 802 F. Supp. 3d at 1309; *Bautista*, 813 F. Supp. 3d at 1127. The Court therefore concludes that the IJ erred in finding *Yajure-Hurtado* operated to divest the immigration court with jurisdiction to consider bond because Petitioner was subject to mandatory detention. Instead, under the reasoning outlined in *Rodriguez* and *Bautista*, he was entitled to a constitutionally adequate bond hearing under § 1226(a).

Petitioner's motion for bond specifically claimed membership in the Bond Eligibility Class as certified in *Bautista* (dkt. # 1-3 at 5), yet the IJ did not acknowledge Petitioner's motion or discuss his potential membership during the hearing (*see generally* dkt. # 1-5). Instead, the IJ appears to have summarily accepted the government's position (which again, was inconsistent with the Class Action Notice served on Petitioner by DHS immediately after his arrest, *see supra* Part I, as well as Respondents' position here) that Petitioner was detained under § 1225(b) and that *Yajure-Hurtado* divested the court of jurisdiction:

> MR. LeBLANC: Your Honor, it's the government's position that the [c]ourt doesn't have the jurisdiction to issue a bond in this case. The respondent entered the United States without inspection. Therefore, in the matter of [*Yajure-*]*Hurtado*, Your Honor, the [c]ourt wouldn't have jurisdiction.
>
> . . .
>
> THE COURT: All right. Thank you. Given the evidence presented, I find in the first instance there is no jurisdiction under [*Yajure-*]*Hurtado* . . .

(Dkt. # 1-5 at 3-4, 9-10.)

ORDER - 10

As further explained below, separate from this erroneous application of *Yajure-Hurtado*, the IJ's failure to acknowledge or consider Petitioner's class membership in *Bautista* is indicative of a broader failure to meaningfully engage with the governing legal standard or the evidence presented, as well a failure to provide a reasoned explanation supporting her decision.

     2.     *The IJ Failed to Consider Evidence and Explain Her Reasoning.*

Despite generally lacking subject-matter jurisdiction to review discretionary bond decisions, *see* 8 U.S.C. § 1226(e), that provision does not "preclude habeas jurisdiction over constitutional claims or questions of law." *Hernandez*, 872 F.3d at 987 (citation modified). A bond denial due to community danger or flight risk is a mixed question of law and fact, subject to judicial review by federal courts under an abuse of discretion standard. *See Martinez*, 124 F.4th at 783. When reviewing a determination for an abuse of discretion, a court may not reweigh evidence, but rather only determine whether the IJ applied the correct legal standard. *Id.* at 785.

In making a bond decision under § 1226(a), an IJ must consider whether the detainee is "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006) (citing *Matter of Patel*, 15 I. & N. Dec. 666 (B.I.A. 1976)). An IJ may also consider any number of discretionary factors, including: (1) whether the detainee has a fixed address in the United States; (2) the detainee's length of residence in the United States; (3) the detainee's family ties in the United States, and whether they may entitle the detainee to reside permanently in the United States in the future; (4) the detainee's employment history; (5) the detainee's record of appearance in court; (6) the detainee's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the detainee's history of immigration violations;

ORDER - 11

(8) any attempts by the detainee to flee persecution or otherwise escape authorities; and (9) the detainee's manner of entry to the United States. *See id.*

Here, although the IJ ultimately declined jurisdiction, she allowed the parties to present argument in the alternative (*i.e.*, as if the immigration court *did* have jurisdiction). (Dkt. # 1-5 at 3.) Petitioner asserts that the IJ "demonstrated a total lack of familiarity with the case and any submitted evidence, never once referring to an item in evidence unless first broached orally, and asking . . . questions already addressed and apparent in the evidence." (Dkt. # 1, ¶ 34.) In response, Respondents argue the applicable federal regulation does not require IJs to issue detailed explanations. (Dkt. # 7 at 14 (citing 8 C.F.R. § 1003.19(f)).) Respondents further argue that Petitioner had "the opportunity to obtain a written bond memorandum providing a detailed explanation of the basis for the denial of bond" by appealing the IJ's decision. (*Id.* at 14-15.) Finally, Respondents argue that "Petitioner's challenge to the sufficiency of the [IJ's] short form order creates a . . . loophole that effectively allows future petitioners to claim due process violations for a lack of factual findings they caused themselves through foregoing [*sic*] an administrative appeal." (*Id.* at 15-16.)

Here, Petitioner does not contend the IJ failed to comply with federal regulations, but rather that he was deprived of a constitutionally adequate hearing under the Fifth Amendment. Thus, the IJ's compliance with federal regulations is irrelevant. As to Respondents' second point, a noncitizen should not have to appeal an IJ's decision to learn the rationale supporting it. A subsequent written memorandum, drafted days after the decision, is not the best evidence of the IJ's reasoning. *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011) ("Post-hoc reconstruction is inadequate because, 'once the court has entered judgment, it may become subject to the very

ORDER - 12

natural weight of its conviction, tending to focus on that which supports its holding.'") (citation omitted).

Contemporaneous recordings are the most accurate evidence of an IJ's decision, and after reviewing the hearing transcript, it remains unclear what evidence the IJ considered, whether it was afforded any weight, and how it ultimately demonstrated that Petitioner posed a danger and a risk of flight. Courts in this District find that an IJ abuses their discretion when they make such summary findings without evidence of a reasoned explanation or meaningful engagement with the evidence. *See, e.g., Vasquez Lopez v. Hernandez*, --- F. Supp. 3d ---, 2026 WL 984151, at *3 (W.D. Wash. April 13, 2026).

The Court provides a summary of the relevant discussion based on the transcript provided: After preliminary matters, the IJ asked Petitioner's counsel where Petitioner would live if released, whether he had a spouse or children, whether there were any pending visa petitions, whether there was a waiver of unlawful entry, and whether he had any criminal convictions. (Dkt. # 1-5 at 5-6.) Next, the IJ asked follow-up questions regarding Petitioner's 2023 conviction and whether he "served any time." (*Id.* at 6.) Then the IJ asked if Petitioner had "the 10 years for cancellation of removal" and whether he committed "any violence or cruelty" to his children. (*Id.* at 6-7.)

At the hearing, the government took the position that Petitioner's 2023 battery conviction supported finding him to be "a danger" and that he was a flight risk because Petitioner had "gone at least [ten] years without attempting to change his status." (Dkt. # 1-5 at 8.)

The IJ's final questions clarified the date of Petitioner's first entry into the United States, how long he remained in Mexico after voluntarily returning, and whether he reentered the United

ORDER - 13

States unlawfully. (Dkt. # 1-5 at 9.) Respondent answered that he returned to the United States days after he voluntarily returned to Mexico. (*Id.*)

The IJ then issued her ruling:

All right. Thank you. Given the evidence presented, I find in the first instance there is no jurisdiction under [*Yajure-*]*Hurtado*. And then in the alternative, I am denying bond. I find [Petitioner] is a danger and a flight risk. I find under the case law that he has failed to meet his burden of proof.

(Dkt. # 1-5 at 10-11.)

While the IJ was not required to *discuss* every piece of evidence, she was required to *consider* all the relevant evidence submitted. *See Cole v. Holder*, 659 F.3d 762, 771-72 (9th Cir. 2011). Petitioner submitted evidence showing he has lived and worked in the United States for over twenty years, is married to a U.S. citizen spouse, has four U.S. citizen children, one of whom suffers from a rare disorder that requires Petitioner's support, and has established stable community connections. There is no evidence that the IJ considered the fact that Petitioner provides extensive support to his minor child who suffers from extensive medical complications. Further, almost all of Petitioner's answers to the IJ's questions weighed against denying bond. In response to her questions, he confirmed with the IJ that he had a U.S. citizen spouse, U.S. citizen children, an approved I-130 visa on file with USCIS, the requisite ten years in the United States to qualify for cancellation of removal, and no instances of extreme cruelty. (Dkt. # 1-5 at 5-8.)

This information was well documented in Petitioner's motion and attached evidence in support (*see generally* dkt. # 1-3), suggesting to the Court the IJ failed to review the evidence submitted by Petitioner prior to the hearing. Further, the evidence presented by Petitioner was directly relevant to several of the *Guerra* factors, yet the IJ provided no explanation why, in light of those positive factors, Petitioner's circumstances would nevertheless motivate him to avoid immigration officials and flee or why she believed he posed a danger to the community. Instead,

ORDER - 14

it appears the IJ summarily adopted the government's position without articulating why. When "[t]he Court is left to speculate concerning how the [IJ] viewed the evidence in light of the applicable factors[,]" it "must conclude that the [IJ] failed to do so, which constitutes an abuse of discretion." *Vasquez Lopez*, 2026 WL 984151, at *3.

In sum, the IJ's bond denial does not rationally apply the governing legal standards to the facts and evidence here. The IJ's erroneous application of *Yajure-Hurtado* in finding Petitioner subject to mandatory detention (and thus without jurisdiction to consider bond) appears to have tainted the remainder of the hearing. Further, the IJ's failure to acknowledge, meaningfully engage with, and ultimately connect the evidence presented at the hearing to her findings of danger and flight risk was an abuse of discretion. This decision aligns with those from other courts in this Circuit. *See*, *e.g.*, *Franco-Rosendo v. Gonzales*, 454 F.3d 965, 966 (9th Cir. 2006) (finding that the BIA abuses its discretion "when it fails to consider and address in its entirety the evidence submitted by a petitioner") (citation modified); *Miri v. Bondi*, 2026 WL 622302, at *8-9 (C.D. Cal. Mar. 5, 2026) (finding an abuse of discretion where an IJ did not explain the reasons for denying bond); *Soto Gimenez v. Hernandez*, 2026 WL 1156075, at * 8 (W.D. Wash. Apr. 29, 2026) (finding the failure to engage with evidence and absence of articulated reasoning was an abuse of discretion).

In so holding, the Court reiterates that its decision is not based on its own assessment of the evidence, but rather in recognition that due process required the IJ to consider all relevant evidence. *See Vilchez v. Holder*, 682 F.3d 1195, 1198 (9th Cir. 2012) (citing *Larita-Martinez v. I.N.S.*, 220 F.3d 1092, 1095 (9th Cir. 2000)). The IJ's failure to do so, during a bond hearing predicated on an erroneous application of *Yajure-Hurtado*, was an abuse of discretion that violated Petitioner's right to due process. Accordingly, Petitioner is entitled to habeas relief.

ORDER - 15

**D.    Relief Due**

Petitioner seeks release from immigration custody. (Dkt. # 1 at 22.) Federal courts have a "fair amount of flexibility" in fashioning specific habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). After determining that an IJ provided a petitioner with a legally or constitutionally deficient bond hearing, courts have either ordered release or ordered Respondents to provide a new constitutionally adequate bond hearing. *Compare Soriano*, 2026 WL 969764, at *6 (ordering immediate release), *with Suchite-Mendez*, 2026 WL 1801004, at *7 (ordering a new bond hearing under § 1226(a) and enjoining the government from denying bond based on mandatory detention under § 1225(b)).

Here, the Court's decision is based on the IJ's failure to consider, engage with, and connect the evidence to her findings, as opposed to finding, as a matter of law, that no rational IJ could have determined Petitioner to be a flight risk or danger based on the evidence presented. Accordingly, Respondents are ordered to grant Petitioner a new bond hearing under which the IJ shall not consider § 1225(b) and shall consider, as applicable, the normal factors used to make bond determinations as identified in *Rodriguez* and *Guerra*, and as statutorily authorized under 8 U.S.C. § 1226(a).

## IV.    CONCLUSION

The Court GRANTS in part Petitioner's petition for writ of habeas corpus (dkt. # 1) and ORDERS as follows:

(1)    Within **seven (7) days** of this Order, unless a continuance is requested by Petitioner, Respondents shall either provide Petitioner with a constitutionally adequate bond hearing under § 1226(a) or release him under an appropriate order of supervision.

ORDER - 16

(2)    Respondents are enjoined from denying Petitioner the ability to be released on bond on the basis that he is subject to mandatory detention under § 1225(b) or the reasoning articulated in *Yajure-Hurtado*.

(3)    The parties shall file a joint status report within **fourteen (14) days** of this Order, confirming compliance with this Order. The status report shall provide if and when the bond hearing occurred, if bond was granted or denied, and the reason(s) for the denial, if applicable.

Dated this 20th day of July, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 17